**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| DANIELLE FISHER, | CASE NO. 12-CV-1268-LAB-NLS |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** |
| vs. | |
| CITY OF SAN DIEGO, | |
| Defendant. | |

## I. Introduction

This § 1983 case settled for $75,000. Fisher now moves for attorney's fees of $35,271.25 under § 1988. There is no dispute here that Fisher substantially prevailed and is eligible for *some* fees award. All that is at issue here is the amount, and the burden is on Fisher to show that she is entitled to the fees she seeks. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Harris v. Maricopa Cty. Sup. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011).

## II. Discussion

Using the lodestar method, the Court first makes an initial estimate of reasonable fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.[1] *Blanchard*, 489 U.S. at 93. This initial estimate may then be adjusted based on other factors, known as *Johnson* factors. *See Johnson v. Ga. Highway Express*, 488 F.2d 714

---

[1] While both parties acknowledge that the Court should use the lodestar approach, Fisher stresses the importance of her contingency fee agreement. The Court may consider a contingency fee agreement when determining a reasonable fee to the extent it is representative of the prevailing rate in the relevant community. *See Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness."). But the City correctly argues under *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000), a contingency agreement cannot be used as a positive or negative multiplier after reasonable fees have been determined.

- 1 -

1  (5th Cir. 1974). Those factors are: (1) the time and labor required; (2) the novelty and
2  difficulty of the questions presented; (3) the skill requisite to perform the legal service
3  properly; (4) the preclusion of other employment by the attorney due to acceptance of the
4  case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
5  imposed by the client or the circumstances; (8) the amount involved and the results
6  obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability"
7  of the case; (11) the nature and length of the professional relationship with the client; and
8  (12) awards in similar cases. *Id.* at 717–719. The goal is to award fees that are adequate
9  to attract competent counsel; it is not to produce a windfall for attorneys. *Blanchard*, 489
10 U.S. at 92 n.6.

**A. Reasonable Hourly Rate**

Fisher argues that her attorney's qualifications justify an hourly rate of $695. While Fisher's attorney, James Mitchell, has been identified as an expert in civil rights litigation, the relevant question is what level of skill, training, and experience was required in *this case*, which settled before an ENE was held or any discovery was taken. *See Blum*, 465 U.S. at 886 n. 11. The Court finds that $695 per hour is too high, for the reasons given below.

First, Fisher's own argument acknowledges the reasonableness of an hourly rate as low as $591 per hour. Mitchell states in his declaration that his "usual contingency rate," and the usual rate charged in the relevant community of attorneys, is 33.3 percent of the gross recovery before filing a lawsuit and 40 percent of the gross recovery after filing. (Dkt. No. 5-2, 3:6-10.) When applied to this case, a 40 percent contingency fee equates to $30,000, or $591 per hour, according to Mitchell's representation of 50.75 hours spent working on Fisher's case.

Second, the only viable claim in this case was a *Monell* claim under § 1983, which Fisher admits raised no novel legal issues. (Dkt. No. 5-1, 10:22.) Even if it was a tough claim to pursue because of Fisher's own guilty plea to a DUI, Arevalos's acquittal on criminal charges relating to her claim, and the City's vigorous defense, much of the work in a case like this is fairly routine, and the degree of expertise required for those tasks is much lower.

*Monell* claims generally are not substantially complex and Fisher's claim, which settled early, proved to be simpler than most.

Third, the delegation of basic legal work to subordinate attorneys is entirely absent in this case. Typically, lawyers who work in firms delegate routine work to junior associates or paralegals who bill at lower rates. Here, Mitchell did all of the work himself, including legal research and the drafting of whole pleadings, tasks typically handled by more junior staff.[2] While Mitchell's declaration indicates that a now former associate of his law firm, Nicole Geske, completed two hours of work on this case at a lower hourly rate of $300, (Dkt. No. 5-2, 7:12), a review of the Mitchell & Gilleon entries of hours billed indicates that nothing was delegated to Geske in this case. (Dkt. No. 5-2, 35-38.) In fact, Mitchell's initials follow each billing entry, and the $35,271.25 Fisher requests is the product of the 50.75 hours billed multiplied by Mitchell's $695 requested rate.

While delegation of more routine tasks is not required, an attorney who does everything himself would typically bill at a lower hourly rate than one who does only the most difficult work. This avoids "top-heavy" billing. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008). Because Mitchell did all the legal work here, a reasonable rate is lower.

So what should the rate be, if not $695 per hour? The City's concedes that a reasonable rate would "not exceed $500 per hour." (Dkt. No. 10, 6:25). The Court agrees, and finds that $500 is the appropriate rate here. The Court is permitted to consider awards in other cases when determining a reasonable hourly fee in the relevant community. *See Johnson*, 488 F.2d at 717. Two kinds of cases are important. First, other cases filed by Mitchell against Arevalos, and second, other § 1983 cases that are comparable to this one.

---

[2] A very experienced *Monell* attorney should be familiar with the elements of § 1983 claims, the legal consequences of accepting a Rule 68 offer, and points to be included in pleadings such as a complaint and a fees motion. Experienced practitioners typically keep exemplars of pleadings drafted in earlier cases, and update them or make changes as needed. Associates are tasked with drafting, basic research, and proofing of motions, and the more senior attorney draws on his expertise to identify legal theories, direct the associate, review drafts, and approve final documents. Where this method is used, the senior attorney's hours are reduced but a higher hourly rate is justified.

Both parties cite the six cases filed by Mitchell related to Arevalos's conduct advancing their arguments for reasonable fees. Fisher calculates, "the average percentage rate for the attorney's fees for [the three cases discussed] was 17%." (Dkt. No. 11, 3:23-28.) She continues, "[i]f the same standard . . . is used to calculate the fees for Fisher's case, a reasonable fee would be $12,750." (Dkt. No. 11, 4:1-3.) Applying this reasonable fee to the 50.75 hours billed in this case yields an hourly rate of $251. Fisher fails to provide the Court with any reason that her case is different from the other cases filed by Mitchell against the City.

Fees awards granted in § 1983 cases generally must be considered within the context of each particular case. *See Bobol v. HP Pavilion Mgmt.*, 2006 WL 927332 at *2 (N.D. Cal., Apr. 10, 2006). However, one case appears sufficiently close in time, location, and circumstances to this case to provide at least anecdotal evidence of what a reasonable hourly rate is. In *Cruz ex rel. Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183 (C.D. Cal. 2009), the district court found hourly rates of $200 to $490 per hour for attorneys with one to thirty-five years of experience in litigating civil rights actions under § 1983 were appropriate. Awarding Mitchell $500 — the high end of that range — seems appropriate under the circumstances of this case.

**B. Hours Reasonably Expended**

While Mitchell billed 50.75 hours on this case over the course of 14 months, the work that was required of him was not that substantial. He had to draft and file a six-page complaint in state court, prepare for and attend two mediations, and seek attorney's fees. No ENE conference was held, and no discovery plan was initiated. Both parties acknowledge that this case was filed and mediated in tandem with six other cases arising from Arevalos's alleged misconduct, and settled under similar circumstances. (Dkt. No. 5-2, 5:19-6:8).

The billing entries suggest that the time billed was unnecessarily high for an attorney experienced in actions under § 1983. For example, they represent that Mitchell spent four hours researching and drafting the six-page complaint that he filed for Fisher in state court

on April 24, 2012. The claims in the complaint — false imprisonment, intentional infliction of emotional distress, and violations of constitutional rights — would be well known to an attorney experienced in civil rights actions. And aside from the § 1983 claim, all claims alleged in the complaint were eventually dismissed. Furthermore, the complaint Mitchell filed discussed the same legal issues, and likely duplicated in part or whole, text contained in complaints filed in Mitchell's six other cases related to Arevalos's alleged misconduct. In light of these circumstances, four hours does not appear reasonable.

Likewise, more than 20 percent of the total hours billed in this case was spent researching and drafting pleadings for attorney's fees. Fisher's attorney's fees motion is lengthy and supported by several declarations, as is her reply to the City's opposition. While it is well established that time spent preparing a fees application is compensable, *see Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986), an attorney familiar with § 1983 claims should reasonably be expected to draft attorney's fees motions in under 10.5 hours.

Finally, it is common practice for attorneys to cut hours for work done in good faith that later proves to have been unnecessary. Fisher's attorneys do not appear to have done that here. Cutting unnecessary hours would have been appropriate on a number of entries, notably, the two hours spent researching and preparing Fisher's opposition to the City's motion to dismiss, a pleading that was never filed. This is not to say Mitchell acted improperly by doing extra research, confirming his understanding of basic legal principles, or familiarizing himself with tangential aspects of the case. However, succinct briefing is preferred. *See, e.g., Gillespie v. Astrue*, 2012 WL 183206, slip op. at *3 (E.D. Tenn., Jan. 18, 2012). That is also not to say attorneys err by devoting more time to briefing where the likely ruling on particular points is in doubt. The Court is aware that cases look simpler in hindsight. But here again, it should have been clear even *ex ante* that not all the billed work was reasonably necessary to prosecute Fisher's claim. Because the billing entries are generalized by task, the Court cannot say with any certainty how much of each day's work was reasonably necessary. Therefore, the Court relies on its own experience and estimates that no more than 30 hours was reasonably expended on this case.

**C. Lodestar**

Based on the Court's determinations of a reasonable hourly rate ($500) and hours reasonably expended (30), the Court calculates the lodestar figure at $15,000. The Court considers this award in light of the *Johnson* factors below.

**D. *Johnson* Factors and Adjustments**

The lodestar figure is presumptively reasonable, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987), and courts do not frequently adjust it after it is calculated. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). On top of that, some of the *Johnson* factors are subsumed within the lodestar calculation, and thus not used as a basis for adjusting the lodestar figure after it is calculated. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). Of those that are not subsumed within the lodestar figure, only the relevant factors need to be considered. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1994). The Court has already considered the time and labor required; the novelty and difficulty of the questions presented; the required skill level; the customary fee in the relevant community; whether the fee is fixed or contingent; attorneys' experience, reputation, and abilities; and awards in similar cases. The remaining relevant factors are the amount involved, the results obtained, and the "undesirability" of the case.

In evaluating the results obtained, the Court examines both the monetary success and the benefit conferred upon the public. While the $75,000 obtained for Fisher in this case may have been excellent, the existence of an excellent result justifies only full compensation for hours reasonably expended on the litigation. An enhancement of the lodestar amount based on the results obtained is justified only in "some cases of exceptional success[.]" *Hensley*, 461 U.S. at 435–36. Considering results obtained in similar cases, including others arising from Arevalos's alleged misconduct also settled by Mitchell,[3] $75,000 is not so exceptional as to warrant an upward adjustment here.

---

[3] Fisher explains that "the Marin case was settled for $100,000 . . . . The Tortora/White case settled for $150,000 . . . Bracewell's case settled for $50,000[.]" (Dkt. No. 11, 3:23-26.)

The public benefit of this case remains to be seen. This case, along with related cases filed by Mitchell's firm, criticizes the City's policies relating to the training and supervision of police officers and the investigation of allegations of misconduct. There is no evidence before the Court that this case affected any change in the complained of City policies. Without such a change in policy it is not obvious what public benefit the $75,000 award serves, aside from compensating Fisher for the injury and distress she allegedly suffered. While the Court cannot determine that this case yielded actual public benefit, to the extent the public interest is served, it justifies a fully compensatory fee, such as has been awarded here under the lodestar calculation.

Likewise, this case is not so undesirable that it warrants a departure from the lodestar calculation. Fisher argues this case was complex and difficult due to the lack of more easily proven respondeat superior claims, Fisher's own guilty plea to a DUI, Arevalos's acquittal on the criminal charges relating to her claim, and the City's vigorous defense. (Dkt. No. 5, 9:23-10:3.) However, Arevalos's November 2011 criminal conviction for conduct similar to that alleged by Fisher would have increased the desirability of this case to plaintiffs' attorneys in the relevant community. Bearing in mind the relevant *Johnson* factors, the Court determines that a fees award of $15,000 is reasonable and that no adjustments are warranted.

### III. Conclusion and Order

For the reasons discussed above, the Court **AWARDS** Fisher $15,000 in attorney's fees under § 1988.

**IT IS SO ORDERED**.

DATED: August 14, 2013

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge